IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MELANIE IVY,                            :
     PLAINTIFF,                        :
                                  :
vs.                                     :          CIVIL ACTION No:
                                  :          1:08-CV-2078-TCB
FORD MOTOR COMPANY,                     :
     DEFENDANT.                        :

**FORD MOTOR COMPANY'S BRIEF IN SUPPORT
OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Ford Motor Company ("Ford") and submits its Brief in Support of Partial Motion for Summary Judgment, respectfully showing the Court as follows:

**PRELIMINARY STATEMENT**

This lawsuit arises from a single vehicle accident involving a 1996 model-year Ford Explorer that occurred on May 22, 2006 in Atlanta, Georgia. The vehicle, (which was more than ten years old and had more than 185,000 miles on it) was being driven by the Plaintiff, Ms. Melanie Ivy at the time of the accident. The vehicle was purchased by Ms. Ivy's mother in 1995 and given to Ms. Ivy in December 2005. Prior to the accident giving rise to this lawsuit, the vehicle had been in numerous other wrecks, including a rollover wreck.  Prior to filing suit, Plaintiff spoliated the key evidence in this case, the subject Ford Explorer.

Plaintiff alleges that the Explorer suffered from design defects related to vehicle dynamics, and handling and stability giving rise to poor resistance to rollover accidents. Plaintiff's lawsuit suffers from a variety of deficiencies that require dismissal. First, Plaintiff cannot prove causation because she has no competent evidence that the Explorer was in the same condition it was when it left the factory. Second, Plaintiff's spoliation requires dismissal. Plaintiff destroyed the vehicle before her lawsuit was filed, preventing Ford from ever inspecting the vehicle. This evidence is extremely critical to the issues in this case, especially considering the vehicle's age and numerous prior accidents. Third, Georgia's statute of repose bars all strict liability claims because the accident took place over ten years after the vehicle was first sold. The statute of repose also bars negligence claims (except failure to warn) because Plaintiff has no competent evidence of "conduct which manifests a willful, reckless, or wanton disregard for life or property." Fourth, Plaintiff has presented no competent evidence to support her failure to warn claim. For these reasons, Ford is entitled to summary judgment on all of Plaintiff's claims.

**FACTUAL BACKGROUND**

## I.   THE VEHICLE'S HISTORY.

Ms. Ivy's mother, purchased the vehicle new in September 1995 from Wyndham Ford in Baldwin, Mississippi. (R. Bobo Dep., attached as Exh. 1 at 20:19-24, 22:1-5, the original of which is being filed with the Court). The vehicle was used in the Ivy/Bobo family for a number of years. (Id. at 25:20 - 26:5). During that time, the vehicle was involved in a number of wrecks, including a rollover accident[1]. (Id. at 9:6-24; 11:3 - 16:21). At the time of the accident, the vehicle had 185,428 miles on it (See Lance Wrecker Service record, attached as Exh. 2). Finally, whether the vehicle was in good or bad repair is unknown.

## II.   THE ACCIDENT.

This accident only involves one vehicle--the subject Ford Explorer. The accident occurred on Holcomb Bridge Road in Gwinnett County, Georgia. Ms. Ivy[2] testified that she was traveling west on Peachtree Corners Circle, and then turned onto

---

[1]    Driven under a tree, on or about 1/16/1998 - $3,374 in damages.
   Rollover accident, on or about 4/3/1998 - $1,722 in damages.
   Backed into concrete barrier on or about 2/11/1999 - $2,679 in damages.
   (R. Bobo Dep. at 11:3-17:4)
   Accident on 12/15/2005 (also on Peachtree Corners Rd. and involving Ms. Ivy) - Multiple car accident, similar allegation of being "cut off" while driving - damages unknown. (Accident Report attached as Exh. 3)
   Subject accident occurred on 5/22/2006 - car totaled.
[2]    Ms. Ivy is a self-admitted "speed racer." (M. Ivy Dep. at 28:7-9 attached as Exh. 4).

Holcomb Bridge Road on the morning of May 22, 2006, when a utility truck pulled out in front of her. (M. Ivy Dep. at 44:10-22, the original of which is being filed with the Court). Ms. Ivy allegedly swerved to avoid the collision and lost control of the Explorer. (Id. at 44:25 – 45:4). Her vehicle then began to flip and Ms. Ivy was ejected from the vehicle. (Id. at 50:10 – 51:21). No citations were issued, and there are only two pictures of the accident scene, none of which show the final rest position of the Explorer.

## LEGAL ARGUMENT AND CITATION OF AUTHORITIES

### I.   SUMMARY JUDGMENT STANDARD.

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The applicable substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When the non-movant has the burden of proof at trial, the movant may carry its burden by demonstrating the absence of an essential element of the non-movant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When determining whether the

movant has met its burden, the trial court must view the evidence and all inferences in the light most favorable to the non-movant. <u>Anderson</u>, 477 U.S. at 25. "If the movant meets this burden, the non-movant then has the burden of showing that summary judgment is not appropriate by setting forth 'specific facts showing that there is a genuine issue for trial.'" <u>Wheat v. Sofamor, S.N.C.</u>, 46 F. Supp. 2d 1351, 1360 (N.D. Ga. 1999).

## II.   <u>PLAINTIFF CANNOT PROVE CAUSATION.</u>

Plaintiff contends that a defect in her Ford Explorer is liable for her injuries. Under Georgia law, to recover under a defective product theory, a Plaintiff must prove that the product was defective "as designed". O.C.G.A. § 51-1-11(b)(1). In addition, Plaintiff must also prove that the product did not suffer from any post-sale alteration or misuse. <u>Center Chem. Co. v. Parzini</u>, 234 Ga. 868, 869, 218 S.E.2d 580, 582 (1975) ("[A] product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling...the seller is not liable....").

The vehicle was destroyed in October 2006, almost two years before Plaintiff filed suit. (*See* Exh. 5 Plf's Resp. to Ford's 1st Interrog. No. 10; Lance Wrecker Service record, attached as Exh. 2; Compl.). Plaintiff carries the burden of proving defect, and since Plaintiff spoliated the subject vehicle, it is

impossible for Plaintiff to show that the vehicle was in the same condition it was when it left Ford's control.  Indeed, all the evidence developed in this case is that the vehicle was *not* in the same condition it was when it left Ford's control.  The vehicle has been in *numerous* accidents (*see* fn. 1, *supra*), has an unknown repair history (*See* Exh. 6 Plf's Resp. to Ford's 1st Request for Production No. 6) and had more than 180,000 miles on it (See Exh. 2 Lance Wrecker Service Record).

Plaintiff's expert Mr. Gilbert has testified under oath that inspecting a vehicle is critical to causation and the ability to rule out other causes[3].  In <u>Garner, *et al* v. Betty Brown and Ford Motor Company</u>, Mr. Gilbert testified as follows:

> Q.  Okay.  All right.  And then can you tell me, is there anything significant about the vehicle inspection that you use as a basis for your opinions in this case?
>
> A.  Yeah. Essentially that the vehicle was in its OEM [original equipment manufacturer] configuration and that there were **no other contributing factors** on the vehicle, for example, a **broken tie rod or something like that, broken sway bar link**.  I did not find anything like that that would have been a **contributor** to the accident.

(emphasis added).  After testifying in other cases that a

---

[3] See Exhibit 7, attached, with deposition testimony from Mr. Gilbert in other cases where he relies on a physical inspection of the subject vehicle in order to determine the condition of the vehicle, its components, and the general level of damage before offering his opinions.

physical inspection of the vehicle is important, Mr. Gilbert testified in this case that he had to "assume" that the vehicle was "fine" or in "OE" [original equipment] condition. (See Gilbert Dep. at 54:16 - 55:1, attached as Exh.8 the original of which is being filed with the Court). Mr. Gilbert also admitted that modifications to the vehicle could affect his opinions as to the cause of this accident. (*See, e.g.* Id. at 51:5-18).

In a recent case with similar facts to the case *sub judice*, the court in Stanley v. Toyota Motor Sales, U.S.A., Inc., 2008 U.S. Dist. LEXIS 83353 (M.D. Ga. Oct. 20, 2008) (Land, J.) adjudicated the matter on summary judgment. In Stanley, the plaintiff was involved in a wreck in his Toyota Celica on December 13, 2005. Id. at *3. In February/March 2006, the salvage yard holding the vehicle scrapped the Celica. Id. at *4. Toyota argued that without expert testimony and/or the vehicle itself, Plaintiff could not prove causation and show that a defect in the Celica's air bag system was the proximate cause of Plaintiff's injuries. The court agreed, and granted Toyota's motion for summary judgment on all theories, including strict liability, breach of warranty, failure to warn, and negligence. Id. at *4 - *14.

Similarly, not having preserved the Explorer, it is impossible for Plaintiff to show that an alleged defect was the

cause of her injuries, as opposed to some alternative contributing factor or other degradation in the vehicle. Since Plaintiff cannot show that the vehicle was in the same condition it was at the time of sale, she cannot maintain her defect claim. *See, e.g.,* <u>Boswell v. OHD Corp.</u>, 292 Ga. App. 234, 236 (2008). Without sufficient evidence to prove causation, summary judgment in favor of Ford is required. <u>Miller v. Ford Motor Co.</u>, 287 Ga. App. 642, 645 (2007).

## III. **PLAINTIFF'S SPOLIATION OF EVIDENCE REQUIRES A SANCTION OF DISMISSAL.**

Plaintiff spoliated the vehicle. A district court has broad discretion in sanctioning a party for the spoliation of evidence, and such sanctions are intended to "prevent unfair prejudice to the litigants and insure the integrity of the discovery process." <u>Gratton v. Great Am. Commc'ns.</u>, 178 F.3d 1373, 1374 (11th Cir. 1999). Dismissal is proper if the spoliation of evidence denies the defendant the ability to adequately defend its case. <u>Flury v. DaimlerChrysler Corp.</u>, 427 F.3d 939, 944-45 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2967 (2006).

In <u>Flury</u>, the plaintiff sued DaimlerChrysler, claiming that the airbag in his truck was defective because it did not deploy when he struck a tree. 427 F.3d at 940-42. The Eleventh Circuit

found dismissal necessary because Plaintiff allowed the truck to be sold for salvage prior to inspection by DaimlerChrysler. The court noted that "*without the vehicle, defendant lost a valuable opportunity to test Plaintiff's theory...*" and that the "*defendant was severely prejudiced as a result of the vehicle's destruction*". Id. at 946 (emphasis added).

The Flury court concluded that federal law governs the evidence issues regarding spoliation, but because federal law in the Eleventh Circuit does not set forth specific guidelines, Georgia law (which is "wholly consistent with federal spoliation principles") should be followed. 427 F.3d at 943-44. Under Georgia law, there are three sanction options for spoliation: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Id. at 945 (*citing* Chapman v. Auto Owners Ins. Co., 469 S.E.2d 783, 784 (Ga. App. 1996)). In deciding whether dismissal is warranted because of spoliation, the court has to consider five factors: (1) whether the defendant was unfairly prejudiced because of the destruction of evidence; (2) if the prejudice could be cured; (3) the practical importance of the evidence; (4) if the Plaintiff acted in bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded. Flury, 427 F.3d at

945 *citing* Bridgestone/Firestone North American Tire, LLC v. Campbell, 574 S.E.2d 923, 926 (2002).

Applying the Campbell factors adopted in Flury to the present case, dismissal is not only warranted, but necessary. First, Ford has been prejudiced as a result of the vehicle's destruction. As in Campbell, Ford will not be able to inspect the vehicle to (1) determine the vehicle had any modifications on it, (2) determine if it was improperly repaired following the vehicle's numerous accidents, and (3) determine if the vehicle was improperly maintained.

Second, because the vehicle has been destroyed, the prejudice suffered by Ford is incurable. See R.A. Siegel Co. v. Bowen, 246 Ga. App. 177, 181 (2000)(explaining "the prejudice could not be cured because the car had been stripped and crushed."). As the Flury court noted, a defendant's ability to examine crush patterns are "often the best evidence of a vehicle's impact speed and absence of such evidence can therefore be highly prejudicial." Flury, 427 F.3d at 946. Plaintiff may argue that photographs are an adequate substitute to a physical inspection and testing of the vehicle, however, Georgia court have rejected that argument. See Chapman, 220 Ga. App. at 541 (reasoning that "[b]ecause the [defendant's]

engineer was unable to perform . . . tests . . . we do not find the photographs of the evidence are an adequate substitute for the original evidence"). Even if photographs *were* acceptable, Ford has NO photographs of the vehicle from before the accident OR any photographs of the vehicle at the accident scene.

Third, Plaintiff's own expert, Mickey Gilbert has admitted under oath in other cases that inspecting the subject vehicle is critical to ruling out contributing factors. Therefore, the practical importance of the physical evidence is undisputed.

Fourth, Plaintiff clearly contemplated filing a lawsuit and had the opportunity to preserve the vehicle between the accident and the destruction date several months later. Therefore, it was incumbent upon Plaintiff to preserve the evidence.

Fifth, an inquiry into the "potential for abuse if expert testimony about the evidence was not excluded," is applicable only if this Court elects not to dismiss this suit. Nonetheless, the potential for abuse is clear. Again, Plaintiff's own expert, Mr. Gilbert, has admitted in other cases that (1) he typically inspects vehicles for any type of alterations or modifications, and (2) the degradation of various parts and the vehicle's alignment and tires can affect the vehicle's handling and stability. Mr. Gilbert opined that this Ford Explorer is defective and the cause of the accident.

However, Ford will *never* be able to inspect the vehicle and determine whether any external factors that Mr. Gilbert looks for in other cases could have caused the accident. Certainly, it would be improper for Mr. Gilbert to provide any testimony regarding the vehicle when he cannot provide a reliable opinion.[4] The court in <u>Flury</u> noted that the reliability of defect theories based solely on expert testimony is "questionable" and leaves defendants in the untenable position of disproving the Plaintiff's theory without physical evidence.   <u>Flury</u>, 427 F.3d at 946.

Accordingly, dismissal is not only warranted, but necessary.

## III. <u>THE GEORGIA STATUTE OF REPOSE BARS PLAINTIFF'S STRICT LIABILITY AND NEGLIGENCE CLAIMS.</u>

### A. <u>O.C.G.A. § 51-1-11(b)(2) Bars Plaintiff's Claims.</u>

Ford also is entitled to summary judgment because

---

[4]   Ford maintains that dismissal is the proper sanction, not exclusion of expert testimony.   Nonetheless, even if the Court chose to exclude Plaintiff's experts, without an expert, Plaintiff would not be able to make out a *prima facie* case to prove the existence of a defect for the underlying product liability claims or demonstrate proximate cause. As a result, the case would have to be dismissed for this additional reason.   See e.g., See <u>Aldridge v. King's Colonial Ford, Inc.</u>, 250 Ga. App. 236, 238, 550 S.E.2d 439, 441 (2001)(affirming summary judgment in favor of manufacturer in product liability action because without expert testimony, plaintiff's allegations did not create a genuine issue of fact); <u>Collins v. Byrd</u>, 204 Ga. App. 893, 894, 420 S.E. 2d 785, 787-88 (1992)(finding that plaintiff's failure to produce any competent evidence of negligence in product liability case involving among other things, failure to warn claim, entitled defendant to summary judgment); <u>see also</u> <u>Gillis v. Toyota Motor Corp.</u>, No. 1:00-CV-3409-CC (N.D. Ga. May 1, 2002)(attached hereto as Exh. 9)(granting summary judgment in favor of defendant in product liability action, including failure to warn claim, where plaintiff failed to provide credible expert evidence).

Plaintiff's strict liability and negligence claims (except failure to warn) are barred by the ten year statute of repose. Georgia's statute of repose for product liability actions provides that "[n]o action shall be commenced pursuant to [O.C.G.A. § 51-1-11] with respect to an injury after ten years from the date of the _first_ sale for use or consumption of the personal property causing or otherwise bringing about the injury." O.C.G.A. § 51-1-11(b)(2) (emphasis added). Georgia's statute of repose applies to claims sounding in both strict liability and negligence. O.C.G.A. § 51-1-11(c). As explained by the Supreme Court of Georgia, the statute of repose was enacted in order to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims. Chrysler Corp. v. Batten, 264 Ga. 723, 725, 450 S.E.2d 208 (Ga. 1994). Therefore, all strict liability and negligence actions filed more than ten years after the "date of the first sale for use or consumption of" the product are completely barred. Id.

Georgia appellate courts routinely affirm summary judgment in favor of product manufacturers when a plaintiff files their lawsuit more than ten years after the date of first sale of the allegedly defective product. For example, in Vickery v. Waste Management of Georgia, Inc., 249 Ga. App. 659, 549 S.E.2d 482 (Ga. App. 2001), the Georgia Court of Appeals affirmed summary

judgment in favor of the manufacturer on the plaintiff's product defect claims.  The product at issue in Vickery was first sold in 1987, but the plaintiff did not file his lawsuit until 1998. His claims, therefore, were barred by the ten year statute of repose.  Vickery, 249 Ga. App. at 659.  See also Batten, 264 Ga. at 727 (affirming summary judgment in favor of manufacturer on plaintiff's design defect claims because barred by statute of repose); Love v. Whirlpool Corp., 264 Ga. 701, 706, 449 S.E.2d 607 (1994)(affirming summary judgment in favor of manufacturer based on statute of repose and finding statute of repose constitutional).

Here, the subject vehicle was first sold by Wyndham Ford to Ruby Bobo in September 1995.  (R. Bobo Dep. at 20:19-24; 22:1-5).  However, Plaintiff brought this product liability action against Ford on May 20, 2008, nearly thirteen years after the first sale of the vehicle.  (See Complaint).  Plaintiff's strict liability and negligence claims (except negligent failure to warn) are thus barred under the statute of repose.

B.   **O.C.G.A. § 51-1-11(c) Exceptions Do Not Apply In This Case.**

The exceptions to the ten-year statute of repose for negligence claims against a manufacturer provided in O.C.G.A. § 51-1-11(c) have no application or effect in this case.

Plaintiff may seek to circumvent the plain operation of the Statute of Repose by relying upon O.C.G.A. § 51-1-11(c), which states in pertinent part:

> The limitations of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming **negligence** of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the **negligence** of such manufacturer in manufacturing products which cause a disease or birth defect or arising **out of conduct which manifests a willful, reckless, or wanton disregard for life or property.**

Id. (emphasis added).  Plaintiff may argue that the exception to the statute of repose provided in § 51-1-11(c) applies to this action by claiming that Ford's conduct in placing this vehicle in the stream of commerce constitutes "willful, reckless, and/or wanton disregard for life." However, Plaintiff's reliance on this subsection is misplaced.

First, by its plain language, subsection (c) applies only to negligence claims. It has no application to strict liability claims.[5] Second, Plaintiff has not, and cannot, establish the

---

[5]    As Georgia case law plainly indicates, subsection (c) was adopted as a response to Hatcher v. Allied Prods. Corp., 256 Ga. 100 (1986), which held that the statute of repose, delineated in subsection (b)(2), was only applicable to strict liability claims. Accordingly, subsection (c) extends the statute of repose only as to product liability negligence claims, where willful and wanton behavior is demonstrated. See generally Batten, 264 Ga. at 725-26 ("Subsection (c) extends the ten-year statute of repose to negligence actions, but differs from subsection (b)(2) by providing for two

requisite willful, reckless or wanton disregard for life or property by Ford.

## IV.  FORD IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO WARN CLAIM.

For a failure to warn case, Plaintiff must show that Ford had a duty to warn, Ford breached that duty, and the breach was the proximate cause of Ms. Ivy's injuries. *See* Powell Duffryn Terminals, Inc. v. Calgon Carbon Corp., 4 F.Supp.2d 1198, 1203 (S.D.Ga. 1998), *aff'd*, 176 F.3d 494 (11th Cir. 1999). Because the failure to warn claim is an exception to the statute of repose, Georgia law regarding failure to warn is instructive.

Georgia recognizes two types of failure to warn claims: (1) a failure to adequately communicate the warning ("conspicuity") or (2) a failure to provide an adequate warning of the product's potential risks ("content"). Thornton v. E.I. DuPont De Nemours & Co., 22 F.3d 284, 290 (11th Cir. 1994). The first breach focuses on the *content* of the warning and whether the warning is sufficient to apprise the user of the dangers associated with the use of the product, while the second breach focuses on *location and presentation* of the warning. Watkins v.

---

exceptions to the statute of repose . . . ."); Love, 264 Ga. at 702 (noting that subsection (b)(2) **bars, without exception,** strict products liability actions commenced ten years after the date of the first sale, and that subsection (c) extends the provisions of subsection (b)(2) to negligence product liability actions, with two exceptions). The strict liability claim requires dismissal without any consideration of whether Ford acted in a willful or wanton manner.

Ford Motor Co., 190 F.3d 1213, 1215 (11th Cir. 1999).

**A.    Plaintiff Does Not Have Competent Evidence to Support a "Conspicuity" Warnings Claim.**

Plaintiff has no competent evidence that the location and presentation of the warnings provided by Ford are inadequate. Plaintiff has no evidence or testing that the size, location, color, or anything to do with the conspicuity of the warnings is unreasonable.   In fact, Ms. Ivy admitted that she was not critical of Ford placing warnings in the Owner's Guide (M. Ivy Dep. at 73:3-10).   Nor was Ms. Ivy critical of how the warnings appeared in the Owner's Guide.   Id. By Plaintiff's own admissions, she cannot prevail on a warnings "location and presentation" claim as a matter of law.

**B.    Plaintiff's Expert Concedes That the "Conspicuity" of a Warning Did Not Cause This Accident.**

Plaintiff has the burden of establishing that the alleged failure to warn was the proximate cause of her injuries. The inability to establish causation bars a failure to warn claim. See Wabash Metal Products, Inc. v. AT Plastics Corp., 258 Ga. App. 884, 889, 575 S.E.2d 683, 687 (2002) (assuming defendant owed a duty to warn and breached that duty, defendant entitled to summary because no evidence that defendant's breach was the cause of the injury). DeLoach v. Rovema Corp., 241 Ga. App. 802, 804, 527 S.E.2d 882, 883 (2000) (holding that summary judgment

is appropriate where plaintiff fails to establish that alleged failure to warn was proximate cause of injury).

In <u>Powell v. Harsco Corp.</u>, 209 Ga. App. 348, 350, 433 S.E.2d 608, 610 (1993), the Georgia Court of Appeals succinctly laid out Georgia law:  "Whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a failure to warn claim."  433 S.E. 2d at 610.

In <u>Powell</u>, the Court of Appeals affirmed summary judgment in favor of a manufacturer of a fiberglass catwalk when the catwalk, which was not properly installed, collapsed, causing the death of a worker at Ponderosa Georgia.  The evidence was undisputed that another employee at Ponderosa Georgia installed the catwalk, but did not review the installation instructions provided by the manufacturer for the catwalk.  <u>Id</u>.  The Court of Appeals held, "the alleged inadequacy of the installation instructions cannot be the proximate cause of the collapse of the catwalk and [the Appellant's] death when the installer did not read the installation directions that Harsco's subsidiary actually provided."

Plaintiff's expert Mr. Gilbert admitted that the "conspicuity" of a warning did not cause this accident.  Indeed, Mr. Gilbert, testified that the driving maneuver allegedly

performed by Ms. Ivy *is not one that can be warned against*.[6]   It

is clear that Plaintiff can not show breach of the "conspicuity"

prong required to make out a failure to warn claim, and thus

causation fails.

**C.   Plaintiff Does Not Have Competent Evidence Of A "Contents" Breach.**

Ford did provide sufficient warnings with this vehicle.

The Owner's Guide for the subject Explorer contains handling and

stability warnings and instructions.   The Owner's Guide states

in part:

> Utility and four-wheel drive vehicles are NOT designed for cornering at speeds as high as passenger cars any more than low-slung sports cars are designed to perform satisfactorily under off-road conditions. Avoid sharp turns or abrupt maneuvers in these vehicles.
>
> * * *
>
> Operate your vehicle within reasonable limits. Sudden acceleration, deceleration, turning, or combinations of these maneuvers can cause a vehicle to behave differently than anticipated.

(*See* Owner's Guide at 261, 268 attached as Exh. 10).

These warnings and instructions clearly warn about vehicle

maneuvering and handling and stability.   Plaintiff has produced

---

[6] (See Gilbert Dep. at 24:24 - 25:23) ("...it's always my opinion that you can't warn against this kind of a -- an emergency maneuver");
(<u>Id</u>. at 26:1-4) ("Q.  So in your opinion the only way to prevent an accident like this would be to change the design of the vehicle? A. Yes.)

no evidence demonstrating that these warnings were inadequate or that additional warnings were necessary (and what type of additional warnings were allegedly necessary).

Ford refers the Court to Mr. Gilbert's testimony at fn. 6, *supra*, that a different or additional warning would not have changed the outcome in this case.

### D.   Plaintiff Cannot Establish A Causal Link Between a "Contents" Failure to Warn Claim and the Alleged Injuries

A failure to read warnings bars a "contents" failure to warn claim.  <u>Cobb Heating & Air Conditioning v. Hertron Chem.</u>, 139 Ga. App. 803, 804, 229 S.E.2d 681, 682 (1976); <u>Thornton</u>, 22 F.3d 284, 290 (11th Cir. 1994) (finding that *failure to read* warning printed on product precludes recovery against manufacturer)(emphasis added).   Indeed, Ms. Ivy testified that she did not even read the warnings that Ford placed in the Owner's Guide.  (M. Ivy Dep. at 70:2-4).   Furthermore, there is no evidence that an additional warning would have changed the behavior of Plaintiff.   In fact, Ms. Ivy admitted that she only reviewed the Owner's Guide for to determine the type of fuel and oil it needed. (Dep. of M. Ivy at 69:19 - 70:4). Ms. Ivy also testified that she never looked for any warnings in the Owner's Guide. (<u>Id.</u>) Thus, even if additional warnings were provided, it cannot be presumed that the Ms. Ivy would have heeded them.

Again, the testimony of Plaintiff's expert Mr. Gilbert ends the argument that a different or additional warning could have prevented this accident.

Plaintiff has failed to establish a causal connection between the injuries and the alleged failure to warn.  There is no evidence that any additional warning that Ford allegedly could have provided at the time of sale would have prevented or reduced the injuries sustained by Plaintiff.  It would be nothing more than gross speculation to suppose that Plaintiff would not have driven the subject vehicle based on the warnings provided or allegedly not provided.

## CONCLUSION

Plaintiff's lawsuit lacks any genuine issue of material fact, and Ford is entitled to summary judgment. Due to the lack of causation, Plaintiff's spoliation of the vehicle, and the unique circumstances surrounding this accident, including vehicle maintenance concerns, and numerous prior wrecks, dismissal is the only appropriate sanction.  In addition, because Plaintiff filed her lawsuit over thirteen years after the vehicle was first sold, the statute of repose bars the strict liability and negligence claims. Similarly, Plaintiff's negligent failure to warn and breach of warranty claims fail as a matter of law.  Based on the foregoing, Ford respectfully

requests that the Court grant its Motion for Partial Summary Judgment.

Respectfully submitted, this 28th day of May, 2009.

McKENNA LONG & ALDRIDGE LLP

/s/ Suneel Gupta, Esq.
Charles K. Reed, Esq.
Georgia Bar No.: 597597
Michael R. Boorman, Esq.
Georgia Bar No. : 067798
Suneel C. Gupta, Esq.
Georgia Bar No: 452203

303 Peachtree Street
Suite 5300
Atlanta, Georgia 30308
404-527-4000

*Of Counsel*

C. Jeffery Ash, Esq.
Huie, Fernambucq & Stewart LLP
Three Protective Center
Suite 200
2801 Highway 280 South
Birmingham, Alabama 35223

Attorneys for Defendant
Ford Motor Company

**FONT CERTIFICATE**

I hereby certify that this pleading was prepared using a font and point selection approved by the Court in Local Rule 5.1C.


/s/Suneel C. Gupta, Esq.
Suneel C. Gupta, Esq.

CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing pleading via CM/ECF upon the following:

> James Carter, Esq.
> James E. Carter & Associates
> 125 Park of Commerce Drive
> Suite D
> Savannah, Georgia 31405

> William C. Lanham, Esq.
> Clark H. McGehee, Esq.
> Johnson & Ward
> 2100 The Equitable Building
> 100 Peachtree Street NW
> Atlanta, Georgia 30303-1912

This 28th day of May, 2009

> McKENNA LONG & ALDRIDGE LLP

> /s/ Suneel Gupta, Esq.
> Charles K. Reed, Esq.
> Georgia Bar No.: 597597
> Michael R. Boorman, Esq.
> Georgia Bar No. : 067798
> Suneel C. Gupta, Esq.
> Georgia Bar No: 452203

303 Peachtree Street
Suite 5300
Atlanta, Georgia 30308
404-527-4000